IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OSPREY 1 LLC,

    Plaintiff,

v.

JANUARY, INC.; NOOSHEEN HASHEMI; and DOES 1 through 10,

    Defendants.

No. C 17-06620 WHA

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

## INTRODUCTION

In this contract dispute, defendants move to dismiss or stay all claims in the complaint on the grounds that plaintiff, a Nevada LLC, lacks the capacity to sue in California. For the reasons stated herein this motion is **DENIED**. Defendants also move to dismiss plaintiff's promissory fraud claim for failure to comply with FRCP 9(b)'s pleading requirements. This motion is **GRANTED**.

## STATEMENT

The following is taken from the well-pled allegations of the complaint. Osprey 1 LLC is a recruiting firm that performs nationwide executive searches and has clients in multiple states (Dkt. No. 1). Osprey recruits, interviews, and presents candidates for positions that its clients seek to fill (*id*. ¶ 8). Osprey formed under the laws of Nevada and its sole member, Stephen Wachter, resides in Park City, Utah (*id*. ¶ 1). Wachter's declaration represents that

the nature of his business enables him to perform his recruiting services from anywhere with internet and cell phone service. As a result, he performs his services from anywhere he travels to, but does the majority of his work from his residence in Park City, Utah (Dkt. No. 15-1).

On May 1, 2017, Noosheen Hashemi, the founder and CEO of a health start-up called January, Inc., contacted Wachter to recruit candidates for executive positions at January (Dkt. No. 1 at ¶ 10). On May 12, 2017, Wachter met with Hashemi at her home office in Atherton, California, where they discussed two executive positions she was looking to fill for January (*id*. ¶ 12). According to the complaint, the parties entered into an oral contract that Osprey would recruit candidates for two positions at January — chief technology officer and chief product officer — in exchange for a $55,000 recruiting fee per filled position. The terms of the agreement provided that $25,000 of the $55,000 fee would be paid up-front as "retainer to initiate work" and the remaining $30,000 would be payable when a candidate signed an employment contract with January. Hashemi also agreed to give Osprey a $2500 travel budget per position for interviewing candidates (*id*. ¶ 12).

Also on May 12, 2017, Osprey sent Hashemi written contracts and invoices back-dated to May 10, embodying the terms and conditions they had agreed to earlier for the CTO and CPO positions (*id*. ¶ 14). On May 17, Hashemi signed the written contract for the CTO position and paid the $25,000 retainer. Hashemi did not sign a written contract or pay a retainer for the CPO position.

Hashemi eventually asked Osprey to search for two more positions identified in the complaint as "E&G" and "U&X Design." Hashemi did not sign a written contract or pay a retainer for either position. Nevertheless, the complaint alleges that Osprey searched for all *four* positions between May and September (*id*. ¶ 15). Hashemi had already paid the retainer for the CTO position. The complaint alleges, therefore, that Osprey was also entitled to the retainers for the CPO, UX Design, and E&G positions — totaling $75,000.

On July 31, 2017, Jane Doe I, a candidate which Osprey presented to January, accepted a job offer for the E&G position (*id*. ¶ 16). Osprey contacted Hashemi to collect $55,000 placement fee for that position. When Hashemi explained that she could not afford to pay

2

$55,000, Osprey agreed to a $5,000 discount for each of the four positions if Hashemi promptly paid $50,000 for the E&G position (*id*. ¶ 17; *see* Dkt. No. 1-7 (updated invoice reflecting discount)).

Thereafter, Osprey continued to search and present candidates for January's remaining three positions (*id*. ¶ 19). On August 30, 2017, Hashemi paid $25,000 on the E&G invoice and informed Osprey that, between the previously-paid $25,000 retainer for the CTO contract and the new $25,000 payment, she considered the fee for the E&G position to be paid in full (*id*. ¶ 23–24). Osprey, however, rejected this reasoning as improper intermingling of separate payments on separate invoices. Osprey further argues that, because Hashemi did not satisfy the condition of the $5000 discount, it now owes Osprey $30,000 (not $25,000) for the E&G position. Additionally, the complaint alleges Osprey is entitled to $25,000 for the CPO retainer, $25,000 for the UX Design retainer, and $1,512 for two trips to California to interview candidates.

In sum, Osprey failed to deliver an acceptable candidate on three out of the four positions, yet demands compensation for the three failures. Osprey has no written contract on three out of four positions. The one written contract (for the unfilled CTO position) is not signed by both sides. Hashemi paid for the one position on which Osprey succeeded except for a dispute over $5,000 for not paying in time.

Osprey came to California and this district to commence this action on November 16, 2017, alleging (1) breach of written contract (2) breach of oral contract (3) breach of implied contract (4) quantum meruit (5) open book account (6) account stated (7) false promise and (8) promissory estoppel (*id*. ¶ 27–74).

**ANALYSIS**

1. **FALSE PROMISE CLAIM FOR RELIEF**

In its seventh claim for relief, Osprey alleges that Hashemi falsely promised that it would make payments for each position. Osprey's promissory fraud claim is subject to FRCP 9(b)'s particularity requirement. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). FRCP 9(b) states that "[i]n alleging fraud or mistake, a party must state with

3

particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Our court of appeals has interpreted FRCP 9(b) to require that a plaintiff state the "who, what, when, where, and how of the misconduct charged" as well as "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks and citation omitted). Plaintiff must state " 'more than the neutral facts necessary to identify the transaction.' " *Kearns v. Ford Motors Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), superseded by statute on other ground) (emphasis in original).

Osprey has failed to satisfy FRCP 9(b)'s heightened pleading standard. Osprey provides no evidence or support for its blanket statement that "Hashemi did not intend to perform these promises when promises were made." (Dkt. No. 1 ¶ 63). A conclusory allegation falls short of the requirement under FRCP 9(b). The complaint merely offers the following limited description of the alleged false promises (*id*. ¶ 62):

> During the period on or about May 1, 2017 through September 2017, Defendant, Noosheen Hashemi made false promises to Plaintiff that Defendant January, Inc., would pay Plaintiff's Payment terms for Plaintiff's Services for each position, which promises were renewed or impliedly reaffirmed each time Defendant requested Plaintiff' Services for a position and each time Defendant accepted a submission of a candidate from Plaintiff, and which promises constitute an express and/or implied representation and promise of payment.

This paragraph does not sufficiently state the "who, what, when, where, and how" of the alleged false promises. The complaint fails to identify specific promises that were made, *where* they were made, and *why* they were false. Osprey does not provide concrete facts regarding *when* these alleged false promises were made, other than alleging they occurred between May and September. In particular, the complaint has not pled any facts to illuminate how and when the parties first discussed the E&G and UX Design positions, yet alone any facts regarding false promises in connection with those two positions.

Moreover, Osprey's allegations that Hashemi's promises were false because she never intended to pay are undermined by the complaint itself. For instance, the complaint states that

4

1 Hashemi paid $25,000 in connection with the CTO position, and another $25,000 in connection
2 with the E&G position. At the minimum, these two payments negate Osprey's contention that
3 Hashemi never intended to pay with respect to at least two promises.

4 Given that the complaint merely alleges that "Hashemi made false promises" without
5 specifying the manner or frequency, the defendants are not given "fair notice of the particular
6 misconduct which is alleged to constitute the fraud" that FRCP 9(b) requires. *Bly-Magee v. Cal.*,
7 236 F. 3d 1014, 1019 (9th Cir. 2001).

8 Because failure to comply with FRCP 9(b)'s pleading requirements is sufficient to
9 dismiss Osprey's promissory fraud claim, this order does not address defendants' further
10 argument that there is no legal basis for the complaint's allegation of "implied" fraudulent
11 misrepresentation.

### 2. OSPREY'S CAPACITY TO MAINTAIN THIS ACTION

13 Defendants move to dismiss or stay all claims in Osprey's complaint pursuant to
14 FRCP 12(b)(6), on the grounds that Osprey does not have the capacity to maintain this action.

15 Defendants argue that Osprey, a Nevada limited liability company, is barred from
16 maintaining this action because it does not have a certificate of qualification to transact intrastate
17 business as required by California Corporation Code Section 17708.07(a). Section 17708.07(a)
18 provides that "[a] foreign limited liability company transacting intrastate business in this state
19 shall not maintain an action or proceeding in this state unless it has a certificate of registration
20 to transact intrastate business in this state." CAL. CORP. CODE § 17708.07(a). The California
21 legislature has defined "transacting intrastate business" as "enter[ing] into repeated and
22 successive transactions of business in this state, other than in interstate and foreign commerce[.]"
23 *id.* § 17708.03(a); *see also*, § 191(a). The defendant, as the moving party, bears the burden of
24 proving (1) the action arises out of plaintiff's transaction of intrastate business; and (2) the action
25 was commenced prior to plaintiff qualifying to transact intrastate business. *United Med. Mgmt.*
26 *Ltd. v. Gatto*, 48 Cal. App. 4th 1732, 1740 (1996)).

Given that Osprey concedes it does not have a certificate of qualification, the issue presented is whether defendants have carried their burden to show Osprey's claims arose out of the transaction of intrastate business, and was therefore required to register in California.

There are issues of fact that need to be resolved through discovery before the issue of whether or not Osprey transacted intrastate business within the meaning of Section 17708.07(a) can be reached. For instance, Osprey's contracts and invoices show a California address at "6950 Almaden Expy, Ste. 122, San Jose, CA." Defendants argue that this is the address to Osprey's office in California. Wachter's declaration, however, denies that allegation and contends that the address is a "mailbox." On its face, this address does not look like a "mailbox" and it appears that Osprey may be misrepresenting its activities within California.

Moreover, neither side has supplied facts to show where the purported contracts required acceptance to become binding. Such facts are of paramount importance given the significance that both statutory authority and court decisions place on where a contract requires acceptance in determining whether a foreign company transacted intrastate business. Taking the signed written contract as an example, it is unclear whether that document conferred power of acceptance on Hashemi upon her signature in California, or whether final acceptance remained with Osprey in Utah. Importantly, the signed contract attached to the complaint is only signed by Hashemi (*see* Dkt. No. 1-1). Yet, Wachter's declaration alleges that he "executed" and "signed" the contract in question outside of California (Dkt No. 15-1 at 2). It is not clear, therefore, where the alleged contracts required acceptance to become binding.

In light of the mentioned inconsistencies in the record, this order reserves decision on this issue at summary judgment (or potentially at trial) where the truth of Osprey's activities in California will be illuminated. For the foregoing reasons defendants' motion to dismiss or stay all claims is **DENIED**.

**3. DEFENDANTS' FAILURE TO ATTACH A PROPOSED ORDER**

In its opposition, Osprey argues that defendants' motion to dismiss should be denied for failure to attach a proposed order as required under Civil Local Rule 7.2(c). Defendants, however, corrected their mistake by including their proposed order in their reply brief.

Accordingly, the undersigned judge excuses defendants' mistake and allows the motion to proceed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or stay all claims asserted in the complaint on the ground that plaintiff lacks the capacity to maintain this suit is **DENIED**. Defendants' motion to dismiss plaintiff's promissory fraud claim is **GRANTED**.

Plaintiff may seek leave to amend the complaint and will have **TWENTY–ONE CALENDER DAYS** from the date of this order to file a motion, noticed on the normal 35–day track, for leave to file an amended complaint. A proposed amended complaint must be appended to the motion. The motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein.

**IT IS SO ORDERED.**

Dated: February 15, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE